SEALED

```
                                           ___FILED        ___RECEIVED
                                           ___ENTERED      ___SERVED ON
                                                    COUNSEL/PARTIES OF RECORD

                                                  NOV 27 2012

                                              CLERK US DISTRICT COURT
                                                DISTRICT OF NEVADA
                                           BY:_____DEPUTY
```

1  DANIEL BOGDEN,
   United States Attorney,
2  TIMOTHY S. VASQUEZ,
   Assistant United States Attorney,
3  333 Las Vegas Blvd. South, Suite 5000
   Las Vegas, Nevada 89101
4  Tele: (702) 388-6336
   Fax: (702) 388-6020

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
### -oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>[1] CHARLES HORKY,<br>[2] KIMBERLY FLORES,<br>[3] ARCHIE GRANATA,<br>[4] DAWIT MOSZAGI,<br>[5] SOLOMON ZEMEDHUN,<br>[6] CLARENCE ADAMS,<br>[7] JAMES REDA,<br>[8] MIKHAIL MALEEV, and<br>[9] OLIVE TOLI,<br><br>Defendants | INDICTMENT<br><br>02:12-CR-440<br><br>**Violations:**<br>[I] 18 U.S.C. § 1962(d) - *Conspiracy to Conduct or Participate in an Enterprise Engaged in a Pattern of Racketeering Activity;*<br>[II] 18 U.S.C. § 1349 - *Conspiracy to Commit Wire Fraud and Bank Fraud;*<br>[III] 18 U.S.C. § 371 - *Conspiracy to Use a Facility of Interstate Commerce to Facilitate Unlawful Activity* |

**THE GRAND JURY CHARGES:**

### COUNT ONE
*Conspiracy to Conduct or Participate in an Enterprise Engaged
in a Pattern of Racketeering Activity in violation of 18 U.S.C. 1962(d)*

### The Enterprise

1.   At times material to this indictment, [1] CHARLES HORKY, [2] KIMBERLY FLORES, [3] ARCHIE GRANATA, [4] DAWIT MOSZAGI, [5] SOLOMON ZEMEDHUN, [6] CLARENCE ADAMS, [7] JAMES REDA, [8] MIKHAIL MALEEV, [9] OLIVE TOLI,

CLS Nevada, LLC, and others known and unknown, constituted a racketeering enterprise (hereinafter "the enterprise") as defined by Title 18, United States Code, Section 1961(4), to wit: a group of individuals associated in fact, which enterprise was engaged in and the activities of which affected interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

2. CLS Nevada, LLC, is a Nevada Limited-Liability which has done business as "CLS Transportation, Las Vegas." CLS Transportation operated limousines and provided limousine services in and around Las Vegas, Nevada. Defendants [1] CHARLES HORKY, [2] KIMBERLY FLORES, [3] ARCHIE GRANATA, [4] DAWIT MOSZAGI, [5] SOLOMON ZEMEDHUN, [6] CLARENCE ADAMS, [7] JAMES REDA, [8] MIKHAIL MALEEV, and [9] OLIVE TOLI were managers, employees or associates of CLS Transportation. Defendant [1] CHARLES HORKY owned a controlling interest in, and was the managing member of, CLS Nevada, LLC, and he actively controlled and directed the operations of CLS Transportation. Defendant [2] KIMBERLY FLORES worked as a manager of CLS Transportation and oversaw its operations and financial affairs. Defendant [3] ARCHIE GRANATA acted as an accountant and financial consultant for CLS Transportation. Defendants, [4] DAWIT MOSZAGI, [6] CLARENCE ADAMS, [7] JAMES REDA, [8] MIKHAIL MALEEV and other members and associates of the enterprise were drivers of CLS Transportation limousines. Defendants [5] SOLOMON ZEMEDHUN and [9] OLIVE TOLI were associates of CLS Transportation who supplied and abetted the enterprise's distribution of controlled substances.

**Purposes, Manner and Means of the Enterprise**

3. The enterprise exploited CLS Transportation's position as a predominant limousine service in Las Vegas to conduct and facilitate a broad range of criminal activities described herein for purposes of enriching the leaders, members, and associates of the enterprise. The managers, members and associates of the enterprise also engaged in conduct for purposes of promoting and

perpetuating the criminal enterprise and shielding it and its criminal affairs from law enforcement authorities.

4. While CLS Transportation was licensed to, and did, provide limousine services in Clark County, Nevada, the defendants used that limousine service business to conduct and promote criminal activities. Members and associates of the enterprise used CLS Transportation to sell and distribute controlled substances and facilitate illegal prostitution. For example, drivers of CLS Transportation's limousines, including [4] DAWIT MOSZAGI, [6] CLARENCE ADAMS, [8] MIKHAIL MALEEV and other of CLS Transportation's drivers, sold and distributed controlled substances, including cocaine and methamphetamine, from CLS Transportation limousines. Defendants [5] SOLOMON ZEMEDHUN and [9] OLIVE TOLI, associates of the enterprise, provided a portion of the controlled substances sold by the enterprise. Drivers of CLS Transportation limousines, including [6] CLARENCE ADAMS and [7] JAMES REDA, also used that business to promote, manage and carry on illegal prostitution.

5. The leaders and managers of the enterprise were aware of, encouraged and facilitated the distribution of controlled substances and facilitation of prostitution through CLS Transportation and its limousines. More particularly, [1] CHARLES HORKY, as the managing member of CLS Nevada, LLC, controlled CLS Transportation. While actively exercising managerial control over CLS Transportation, [1] CHARLES HORKY countenanced and encouraged such criminal activity. Defendant [1] CHARLES HORKY required CLS Transportation's drivers to periodically pay him fees knowing and expecting that drivers would obtain a portion of those sums from the distribution of controlled substances and other criminal activities including facilitation of prostitution. Defendant [1] CHARLES HORKY explicitly directed CLS Transportation drivers, including [6] CLARENCE ADAMS, [7] JAMES REDA and others not indicted herein, to promote, manage and carry-on illegal prostitution. Further, [1] CHARLES HORKY retained drivers whom he knew to engage in such illegal activities.

6. The leaders and managers of the enterprise also engaged in financial frauds for purposes of enriching the enterprise and artificially inflating its accounts. Defendants [1] CHARLES HORKY, [2] KIMBERLY FLORES, [3] ARCHIE GRANATA, and others known and unknown, conspired to augment CLS Transportation's accounts by obtaining money from fraudulent credit card transactions and bank fraud.

7. CLS Transportation and its employees and associates offered limousines for hire and routinely provided transportation to its customers for a fee. Customers often paid for those services with credit cards or other access devices. Such charges were processed by [2] KIMBERLY FLORES and others in the offices of CLS Transportation and transmitted to American Express and its processing agents by means of the interstate wire. In addition to the charges authorized by card-holders, the defendants devised and executed a scheme to defraud American Express and multiple American Express card-holders, and to obtain money by means of false and fraudulent pretenses and representations. As part of this scheme, the defendants obtained American Express access devices and account numbers from customers of CLS Transportation. In addition to the charges authorized by such customers, the defendants used the American Express cards and account numbers to fraudulently effect unauthorized transactions under the pretense that the additional charges had been authorized. The fraudulent charges were processed in the same manner as authorized charges; the fraudulent charges were transmitted by the defendants from CLS Transportation's office in Las Vegas, Nevada, to American Express and its processing agents by means of the interstate wire. In this manner, the defendants fraudulently obtained more than $2,800,000 from American Express by means of false and fraudulent pretenses and representations and defrauded American Express and multiple American Express card-holders. Many of the defrauded American Express card-holders contested the fraudulent charges. After contacting CLS Transportation in an attempt to verify contested charges, American Express frequently executed "charge-backs" to recovered money fraudulently paid to CLS Transportation and notified management of CLS Transportation of the fraudulent transactions. Despite such notifications and

3

charge-backs, the fraudulent transactions continued unabated. In light of the recurring fraudulent transactions from CLS Transportation, American Express eventually cancelled CLS Transportation's merchant account. Defendants [1] CHARLES HORKY and [3] ARCHIE GRANATA circumvented American Express's counter-measures and perpetuated the fraudulent scheme by fraudulently opening successive additional American Express merchant accounts under false names, aliases and nominees.

8. The defendants also combined and conspired to fraudulently obtain money to meet short-term deficiencies through bank fraud. More particularly, the members and associates of the enterprise combined and conspired to fraudulently obtain unauthorized sums of money from the Bank of George, a depository institution insured under the Federal Deposit Insurance Act, through a check-kiting scheme. The Office of the Comptroller of the Currency in its *Policy Guidelines for National Bank Directors* has defined check-kiting as "a method whereby a depositor ...utilizes the time required for checks to clear to obtain an unauthorized loan without any interest charge." Leaders and managers of the enterprise, including [1] CHARLES HORKY, [2] KIMBERLY FLORES and [3] ARCHIE GRANATA, devised a scheme to draw checks on CLS Transportation's payroll account at the Bank of George knowing that those accounts did not contain sufficient funds for payment of those checks. As part of the conspiracy, [1] CHARLES HORKY, [2] KIMBERLY FLORES and other members and associates of the enterprise combined to issue such checks to multiple employees and associates of CLS Transportation, including [2] KIMBERLY FLORES herself and [6] CLARENCE ADAMS. As part of the scheme, the recipients of those checks cashed them at casinos and other locations in Las Vegas, Nevada, and the proceeds were then deposited into CLS Transportation's accounts at the Bank of George to cover pre-existing deficiencies and prior checks. In this manner and as part of this scheme, the defendants knowingly issued themselves and their associates thousands checks drawn on a Bank of George account without sufficient funds to honor those checks, in effect taking hundreds of successive unauthorized loans from the Bank of George. While the check-kiting scheme spanned earlier and later years and

continued through 2012, in 2010 alone the conspirators issued and cashed more than 1,500 checks and obtained an aggregate sum of more than $2,400,000 as part of the fraudulent scheme.

## The Racketeering Conspiracy

9. Beginning on a date unknown, but not later than September 2008, and continuing through about November 2012, in the State and Federal District of Nevada and elsewhere within the jurisdiction of this Court,

> [1] CHARLES HORKY,
> [2] KIMBERLY FLORES,
> [3] ARCHIE GRANATA,
> [4] DAWIT MOSZAGI,
> [5] SOLOMON ZEMEDHUN,
> [6] CLARENCE ADAMS,
> [7] JAMES REDA,
> [8] MIKHAIL MALEEV and
> [9] OLIVE TOLI,

the defendants herein, being persons employed by and associated with the enterprise, which engaged in, and the activities of which affected, interstate commerce, knowingly and intentionally combined, conspired, and agreed with one another and others known and unknown, to violate the provisions of Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of affairs of the enterprise through a pattern of racketeering activity, as that term is defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of multiple violations of the following federal and state laws:

(a) Using, or causing the use of, interstate wire communications facilities in furtherance of a schemes to defraud American Express and American Express card-holders, in violation of Title 18, United States Code, Section 1343;

(b) Knowingly and with intent to defraud effecting transactions with access devices issued to other persons to receive payment of an aggregate value greater than one thousand dollars ($1,000) during a one-year period, in violation of Title 18, United States Code, Section 1029(a);

(c) Executing a scheme to defraud the Bank of George, a depository institution insured under the Federal Deposit Insurance Act, in violation of Title 18, United States Code, Section 1344;

(d) Using a facility of interstate commerce with intent to distribute the proceeds of prostitution activities and otherwise promote and facilitate prostitution offenses under the laws of the State of Nevada, to wit: Nevada Revised Statutes § 201.354, in violation of Title 18, United States Code, Sections 1952(a)(1) and 1952(a)(3); and

(e) Distributing controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

All in violation of Title 18, United States Code, Section 1962(d).

### COUNT TWO
*Conspiracy to Commit Wire Fraud and
Bank Fraud in violation of 18 U.S.C. § 1349*

1. The allegations contained in Count One of this Indictment are hereby re-alleged and incorporated by reference as if fully set forth herein.

2. Beginning on a date unknown, but not later than September 2008, and continuing through about October 2012, in the State and Federal District of Nevada and elsewhere within the jurisdiction of this Court,

   [1] **CHARLES HORKY,**
   [2] **KIMBERLY FLORES,**
   [3] **ARCHIE GRANATA** and
   [6] **CLARENCE ADAMS,**

defendants herein, knowingly and willfully combined, conspired, and agreed with one another, and others known and unknown, to commit offenses under Chapter 63 of Title 18 of the United States Code, that is, to commit wire fraud in violation of Title 18, United States Code, Section 1343, and to commit bank fraud in violation of Title 18, United States Code, Section 1344, all in violation of Title 18, United States Code, Section 1349.

## COUNT THREE
*Conspiracy to Use a Facility of Interstate Commerce to Facilitate Unlawful Activity in Violation of 18 U.S.C. § 371*

1. The allegations contained in Count One of this Indictment are hereby re-alleged and incorporated by reference as if fully set forth herein.

2. Beginning on a date unknown, but not later than November 2011, and continuing through on or about November 2012, in the State and Federal District of Nevada and elsewhere within the jurisdiction of this Court,

> [1] **CHARLES HORKY,**
> [2] **KIMBERLY FLORES,**
> [6] **CLARENCE ADAMS** and
> [7] **JAMES REDA,**

defendants herein, knowingly and willfully combined, conspired, and agreed with one another, and others known and unknown, to commit offenses under Title 18, United States Code, Sections 1952(a)(1) and 1952(a)(3), that is, to use a facility in interstate commerce, that is, the telephone and wire, with the intent to distribute the proceeds of an unlawful activity, that is, prostitution, in Clark County, Nevada, in violation of Nevada Revised Statutes § 201.354,[1] and to otherwise promote, manage, establish, carry on and facilitate the promotion, management, establishment and carrying on of said unlawful activity.

### Conduct in Furtherance of the Conspiracy

3. As discussed in Count One, CLS Nevada, LLC, is a Nevada Limited-Liability Company that does business in Clark County, Nevada, as "CLS Transportation, Las Vegas." Defendant [1] CHARLES HORKY holds a controlling interest and is the managing member of CLS Nevada, LLC, and actively controls CLS Transportation. Defendant [2] KIMBERLY FLORES is a manager of

---

[1] Under the laws of the State of Nevada, "[i]t is unlawful for any person to engage in prostitution or solicitation therefor, except in a licensed house of prostitution." Nevada Revised Statutes § 201.354. While Nevada Revised Statutes § 244.345 permits a county with a population of less than 700,000 (or, until June 2011, 400,000) to license brothels, the population of Clark County, Nevada, has exceeded that limit at all times material to this indictment. Further, Clark County ordinance 12.08.015 expressly prohibits prostitution.

7

CLS Transportation. Defendants [6] CLARENCE ADAMS and [7] JAMES REDA were two of the drivers of CLS Transportation's limousines.

4. As part of and in furtherance of the conspiracy, [1] CHARLES HORKY directed CLS Transportation's drivers, specifically including [6] CLARENCE ADAMS, [7] JAMES REDA and others not indicted herein, to promote, conduct and carry-on prostitution in Clark County, Nevada, in violation of Nevada law. On multiple occasions, the conspirators used telephones and the wire to facilitate, promote, manage and carry-on prostitution. For example:

(a) On November 17, 2011, [1] CHARLES HORKY and a driver exchanged texts regarding the driver's impending travel out of Nevada. In those communications, the driver advised [1] CHARLES HORKY that "Bones" (now known to be [6] CLARENCE ADAMS) would be using his telephones while the driver was away. The following day, November 18, 2011, the driver sent a series of texts to [6] CLARENCE ADAMS which read: "sending you a msg about the girls I use...Im glad I chose these 2 wknds off;" "Here r my girls #'s for any clients looking for girls, use in this order, Gina [phone number redacted], Christine [phone number redacted], Amy [phone number redacted], Yvonne [phone number redacted], Serena [phone number redacted], u collect from the girls too, just tell the client that the girls will call them & don't talk $, then collect 20% on 1g or less & 30% on anything over that."

(b) On December 1, 2011, [1] CHARLES HORKY called the same driver and asked him where he was. The driver replied that he was just throwing his suit on and getting ready to head into the office. Defendant [1] CHARLES HORKY then stated, "I need two girls around midnight tonight for my attorney, you've done that for me before . . . . a thousand dollars a piece. Here's the fucking marching orders . . . ." After the driver responded in the affirmative, [1] CHARLES HORKY continued "The girls go in, they take off their clothes, they grab these guys dicks, and they stick 'em in their pussies, and they fuck. Ok?" Defendant [1] CHARLES HORKY subsequently emphasized: "there's no courting, there's no extra money, there's no nothing, you walk in and you fuck . . . . It would be a ten minute

8

job and it would be the fastest thousand dollars they ever made". On December 2, 2011, [1] CHARLES HORKY sent a text message to the driver inquiring, "How did joe go?" seeking to confirm that the prostitution services were provided as he had directed. In his response, the driver wrote:"Wow, she has a lot of nerve...Joe went great, he loved her, shes very new at this which is kinda hot!"

(c) On February 2, 2012, [7] JAMES REDA called [1] CHARLES HORKY. During this telephone conversation, [1] CHARLES HORKY and [7] JAMES REDA discussed prostitution:

| | | |
|---|---|---|
| HORKY: | "Hey, you got a line on whores?" |
| REDA: | "I do." |
| HORKY: | "I need three." |
| REDA: | "Three, alright." |
| HORKY: | "Yeah... this guy's a really good friend of mine and I've known him a lot of fucking years, he's a lawyer in LA. He's a badass. I told him a thousand a girl. Is that good enough?" |
| REDA: | "That's way good enough." |
| HORKY: | "Okay, I actually told him five-hundred to a thousand I said, but I said the better ones are a thousand. And he said, 'I don't really care.' So, I'm gonna text you his number. I'm gonna group text you and him. And I'm gonna tell him that you're cool, and that uh you're gonna be calling him. And uh, just you know. You got decent stock don't ya?" |
| REDA: | "... oh yeah of course I do, of course I do. And the girls I know they won't up-sell or none of that shit. They'll give em, you know they'll be happy." |
| HORKY: | "Yeah, I don't like it when the girls turn in to pigs, like try to jack |

9

|   |   |
|---|---|
|   | the guy off. It's a thousand bucks. And listen, I say this. I haven't done any business like this before [with you], but here's what I expect. I had bad. Over the years, I've been doing this a long time. I've had girls do shit where they'll go up there and they'll say to the guy, 'hey how was the pussy?' And they'll go, 'she didn't fuck me.' And I go, 'what do you mean you didn't fuck you.' Some guys are kind of shy and shit. I expect girls to go in there and take your clothes off and fuck." |
| REDA: | "Yeah, so that's no problem." |
| HORKY: | "Okay, alright so I'll give you, I'll turn you on the deal and just take care of my boy. Okay?" |
| REDA: | "Yeah, no problem." |

(d) On February 3rd, 2012, [1] CHARLES HORKY called [7] JAMES REDA and asked: "So, are you working tonight?" Defendant [7] JAMES REDA replied: "I am sir." As the conversation continued, they discussed a client and [7] JAMES REDA noted that "one of my girls went and seen him at, I don't know, like five in the morning or something." They then discussed where [7] JAMES REDA was to take the client that evening and [1] CHARLES HORKY stated: "I told him again, I said, look if you get pussy, I go, you go through James [REDA], you don't go pick up no skanks on the street."

(e) On February 13th, 2012, at 9:35 a.m., [1] CHARLES HORKY sent a text to [7] JAMES REDA that read: "Need smoking hot girl for later Like 10 or 11 talk later." At 9:47 a.m., [1] CHARLES HORKY called a male identified as "Bruce" and discussed another unknown male. In the course of that conversation, [1] CHARLES HORKY asked: "Should I get him some pussy?", and "What kind of bitches does he like that you know of?" "Bruce" replied, "He likes spinners, you know." Defendant [1] CHARLES HORKY responded, "he like little petite fuck'n . . .," and "Bruce" interrupted and stated, "100 pound, 105 pounders." At 9:51

a.m., [1] CHARLES HORKY sent a text message to [7] JAMES REDA that read: "Short spinner like hot."

5. Patrons who received prostitution services provided by the conspirators occasionally paid for the conspirators' fees with credit cards. As part of and in furtherance of the conspiracy, members and associates of the enterprise, including [1] CHARLES HORKY, [2] KIMBERLY FLORES and others known and unknown, used the interstate wire to process those credit card charges and distribute the proceeds of, and otherwise facilitate, prostitution.

All in violation of Title 18, United States Code, Section 371.

. . .

### FORFEITURE ALLEGATION ONE
*Conspiracy to Conduct or Participate in an Enterprise Engaged in a Pattern of Racketeering Activity in violation of 18 U.S.C. § 1962*

1. The allegations contained in Count One of this Indictment are hereby re-alleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 1963(a)(1), (2), and (3).

2. Upon conviction of the felony offense charged in Count One of this Indictment,

> [1] CHARLES HORKY,
> [2] KIMBERLY FLORES,
> [3] ARCHIE GRANATA,
> [4] DAWIT MOSZAGI,
> [5] SOLOMON ZEMEDHUN,
> [6] CLARENCE ADAMS,
> [7] JAMES REDA,
> [8] MIKHAIL MALEEV and
> [9] OLIVE TOLI,

defendants herein, shall jointly and severally forfeit to the United States of America:

(a) any interest acquired or maintained in CLS Nevada, LLC, in violation of Title 18, United States Code, Section 1962;

(b) any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, the enterprise named and described herein, CLS Nevada, LLC, which the defendants established, operated, controlled, conducted, or participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and

(c) any property constituting, or derived from, any proceeds obtained, directly or indirectly, from racketeering activity in violation of Title 18, United States Code, Section 1962, an in personam criminal forfeiture money judgment of $5,200,000.00 in United States currency.

3. If any of the property subject to forfeiture pursuant to Title 18, United States Code, Section 1963(a)(1), (2), and (3) as a result of any act or omission of the defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

12

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America to seek forfeiture of any properties of defendants for the in personam criminal forfeiture money judgment of $5,200,000.00 in United States currency pursuant to Title 18, United States Code, Section 1963(m).

All pursuant to Title 18, United States Code, Sections 1962, 1963(a)(1), (2), and (3), and 1963(m).

### FORFEITURE ALLEGATION TWO
*Conspiracy to Commit Wire Fraud and Bank Fraud*

1. The allegations contained in Count Two of this Indictment are hereby re-alleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. Upon conviction of the felony offense charged in Count Two of this Indictment,

[1] **CHARLES HORKY**,
[2] **KIMBERLY FLORES**,
[3] **ARCHIE GRANATA** and
[6] **CLARENCE ADAMS**,

defendants herein, shall jointly and severally forfeit to the United States of America, any property, real or personal, which constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Sections 1343 and 1344, specified unlawful activities as defined in Title 18, United States Code, Sections 1956(c)(7)(A) and 1961(1)(B), or Title 18, United States Code, Sections 1349, conspiracy to commit such offenses, an in personam criminal forfeiture money judgment of $5,200,000.00 in United States Currency.

3. If any property subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendants –

13

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any properties of the defendants for the in personam criminal forfeiture money judgment of $5,200,000.00 in United States Currency.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c); Title 18, United States Code, Sections 1343 and 1344, specified unlawful activities as defined in Title 18, United States Code, Sections 1956(c)(7)(A) and 1961(1)(B); Title 18, United States Code, Section 1349; and Title 21, United States Code, Section 853(p).

### FORFEITURE ALLEGATION THREE
*Conspiracy to Use a Facility of Interstate Commerce to Facilitate Unlawful Activity in Violation of 18 U.S.C. § 371*

1. The allegations contained in Count Three of this Indictment are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2. Upon conviction of the felony offense charged in Count Three of this Indictment,

> [1] **CHARLES HORKY,**
> [2] **KIMBERLY FLORES,**
> [6] **CLARENCE ADAMS** and
> [7] **JAMES REDA,**

defendants herein, shall forfeit to the United States of America, any property, real or personal, which constitutes or is derived from proceeds traceable to violations of Nevada Revised Statutes § 201.354 and Title 18, United States Code, Section 1952(a)(1) and (a)(3), specified unlawful activities as defined

in Title 18, United States Code, Sections 1956(c)(7)(A) and 1961(1)(B), or Title 18, United States Code, Section 371, conspiracy to commit such offenses, an *in personam* criminal forfeiture money judgment.

3. If any property subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendants –

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third party;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any properties of the defendants for the *in personam* criminal forfeiture money judgment.

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

All pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c); Nevada Revised Statutes § 201.354 and Title 18, United States Code, Section 1952(a)(1) and (a)(3), specified unlawful activities as defined in Title 18, United States Code, Sections 1956(c)(7)(A) and 1961(1)(B);Title 18, United States Code, Section 371; and Title 21, United States Code, Section 853(p).

**A TRUE BILL:**

_____/s/_____
FOREPERSON OF THE GRAND JURY

**DATED:** this _27th_ day of November 2012.

DANIEL BOGDEN,
United States Attorney

_____
TIMOTHY S. VASQUEZ
Assistant United States Attorney